1  PATRICIA H. LYON (State Bar Number 126761)
   CELINE MUI SIMON (State Bar Number 267786)
2  FRENCH & LYON
   Attorneys At Law
3  A Professional Corporation
   One Sansome Street, Suite 750
4  San Francisco, CA  94104
   Telephone:  415-597-7800
5  Facsimile:  415-243-8200

6  Attorney for Secured Creditor,
   U.S. Bank National Association, as
7  Trustee of the Lehman Brothers Small
   Balance Commercial Mortgage Pass-Through
8  Certificates 2006-1 by Ocwen Loan Servicing,
   LLC its Attorney-in-Fact

9

10                 UNITED STATES BANKRUPTCY COURT

11                 NORTHERN DISTRICT OF CALIFORNIA

12                       (SAN JOSE DIVISION)

13

14  In re:                          ) Case No.:  12-53036
                                    )
15                                  ) Chapter 11
    HASSAN DASTGAH                  )
16                                  ) **SECURED CREDITOR U.S. BANK'S**
                                    ) **OBJECTION TO DISCLOSURE**
17          Debtor.                 ) **STATEMENT**
                                    )
18                                  ) Hearing:
                                    ) Date:     October 15, 2012
19                                  ) Time:     2:15 p.m.
                                    ) Judge:    Hon. Arthur S. Weissbrodt
20                                  ) Place:    Courtroom 3020
                                    )
21  _____ )

22        Secured Creditor U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE OF THE

23  LEHMAN BROTHERS SMALL BALANCE COMMERCIAL MORTGAGE PASS-

24  THROUGH CERTIFICATES 2006-1 BY OCWEN LOAN SERVICING, LLC ITS

25  ATTORNEY-IN-FACT ("Bank") hereby objects to the Proposed Combined Plan of

26  Reorganization and [Tentatively Approved] Disclosure Statement ("Disclosure Statement") filed

27  by Debtor HASSAN DASTGAH ("Debtor") on the grounds that it contains inadequate

28  information and on the further grounds that the Plan described in the Disclosure Statement is

                                    -1-

Case: 12-53036   Doc# 55   Filed: 10/08/12   Entered: 10/08/12 17:16:50   Page 1 of
10

unfair and is not feasible and, therefore, not confirmable.

## I.     STATEMENT OF FACTS

The Bank is the holder of a Promissory Note in the original principal amount of $1,755,000.00 ("Note") executed by Debtor in favor of Lehman Brothers Bank, FSB ("Lehman"), as the original lender, and secured by a Deed of Trust recorded on December 1, 2005 as Document No. 18701414 of the Official Records of the County of Santa Clara, California, and covering that certain real property generally described as 552-560 South Bascom Avenue, San Jose, California ("Property" or "Burbank Property").  (See Proof of Claim, Claim No. 9, attached as Exhibit "G" to the Request for Judicial Notice ("RFJN") filed herewith.)

The Deed of Trust was assigned to the Bank by Lehman pursuant to that certain Assignment of Deed of Trust recorded on June 22, 2009 as Document No. 20303477 in the Official Records of the County of Santa Clara, California.  (*Id.*)

Under the terms of the Note, Debtor is required to make monthly principal and interest payments with interest calculated on the unpaid principal balance at an interest rate based on the London Interbank Offered Rate ("LIBOR") for three month United States dollar deposits as published in the Wall Street Journal, plus a margin of 5.550 percentage points through the maturity date of December 1, 2030.  (*Id.*)

On or about July 12, 2009, Debtor filed the first petition under Chapter 11 of the Bankruptcy Code as Case No. 05-55611 ("First Case").  (RFJN, Exhibit "A.")  In the First Case, on May 16, 2011, the Honorable Stephen L. Johnson of this Court denied approval of the Disclosure Statement on the grounds that, inter alia, that it was confusing, it did not provide adequate information to creditors, it referred to "family members" as contributors to the Plan, but did not disclose the identity of the family members or how they would be responsible for funding the Plan, and that the proposed Plan was not confirmable as the amounts set forth in the Plan were uncertain, there was no disclosure of the full amounts due to the various creditors, and there was no basis for the attempted cram-down of the US Bank debt.  (RFJN, Exhibit "E".)  At a later continued hearing on the Disclosure Statement, Judge Johnson determined sua sponte that dismissal of the First Case was in the best interests of the creditors and entered an Order

Case: 12-53036     Doc# 55     Filed: 10/08/12     Entered: 10/08/12 17:16:50     Page 2 of 10

Dismissing Chapter 11 Case.  (RFJN, Exhibit "F.")

On or about April 23, 2012, Debtor filed this second petition under Chapter 11 of the Bankruptcy Code ("Second Case").  In this Second Case, although Debtor's income increased from $7,450.00 to $29,133.00, Debtor's secured debt also increased from $3,299,803.00 to $3,983,000.00.  (Schedules D and I filed on July 27, 2009 in the First Case attached as Exhibits "B" and "C" to the RFJN; and Schedules D and I filed on May 7, 2012 in the Second Case.) Debtor filed the proposed Plan and Disclosure Statement on September 7, 2012.  The same defects exist with this Disclosure Statement and proposed Plan as existed in the First Case.  The Plan described in the Disclosure Statement impairs the Bank's claim by extending the repayment term to 30 years, changing the interest rate to a fixed rate at only 4.75% per annum, and imposing an unduly long notice period after default, which impairs the Bank's right to exercise its remedies after a default.  The Disclosure Statement is confusing and fails to describe the amount of the Bank's and other creditors' arrears.  Accordingly, and as set forth more particularly below, the Disclosure Statement is simply inadequate and the proposed Plan is not confirmable.

**II.     ARGUMENT**

Prior to soliciting acceptance of a plan, every claimant and interest holder must receive a disclosure statement that is approved by the court as containing "adequate information."  11 U.S.C. §1125(b).  "Adequate information" is defined as "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records . . . that would enable . . . a hypothetical investor . . . to make an informed judgment about the plan."  11 U.S.C. §1125(a)(1).  When determining whether the information is adequate, "the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information."  *Id.*

A disclosure statement is supposed to provide creditors and interest holders with the necessary information to decide on how to vote on, or whether to object to, a plan of reorganization.  *In re California Fidelity, Inc.*, 198 B.R. 567, 571 (Bankr. B.A.P. 9th Cir. 1996).

Case: 12-53036     Doc# 55     Filed: 10/08/12     Entered: 10/08/12 17:16:50     Page 3 of 10

In order for creditors and interest holders to be able to exercise their rights, a disclosure statement must be clear and comprehensive before it can be approved by a court. *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D. N.H. 1991). Where there are numerous or significant inaccuracies or omissions in a disclosure statement, a court must deny approving it in order to protect the interests of creditors. *In re Cardinal Congregate I,* 121 B.R. 760, 766-767 (Bankr. S.D. Ohio 1990). Without full disclosure of adequate information, creditors and interest holders are unable to exercise their voting rights and their rights to object to confirmation of the Plan.

When interpreting what is "adequate information," the Courts have developed checklists of information necessary to satisfy the requirements of section 1125 which include, *inter alia,* the anticipated future of the Debtor, the present financial condition of the debtors, a liquidation analysis, risks to creditors under the Plan, and a feasibility analysis. (*In Re Metrocraft Publishing Service, Inc.,* 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984); *In Re A.C. Williams Co.,* 25 B.R. 173, 176 (Bankr. N.D. Ohio 1982).

As discussed below, Debtor's Disclosure Statement fails to provide "adequate information" to creditors under 11 U.S.C. §1125, and should not be approved.

### A. The Disclosure Statement Fails To Disclose "Adequate Information" Under 11 U.S.C. §1125.

According to the Disclosure Statement, Debtor filed this bankruptcy to save the Property from imminent foreclosure. (Disclosure Statement, Exhibit 1.) In addition, Debtor claims that he "fell behind on his mortgage payments in 2009 when the property had not been generating sufficient rental income and due to some inadvertent lapse in insurance coverage that led to force placed insurance on the property, which the Debtor was unable to pay. . . Last but not least, the Debtor fell significantly behind on his property tax obligations with respect to the Burbank Property."

Although Debtor claims to have increased rental income from the Property from $1,450 to $16,633, there still does not appear to be sufficient rental income to cover the Property's expenses as described in the Disclosure Statement. (See Exhibit 5 to the Disclosure Statement and RFJN, Exhibit "D", p.4.) According to the Disclosure Statement, Debtor collects monthly

-4-

Case: 12-53036    Doc# 55    Filed: 10/08/12    Entered: 10/08/12 17:16:50    Page 4 of 10

rental income from the Property in the amount of $16,663, which results in $0 net income. However, the sum of all the described expenses appears to exceed the monthly rental income, resulting in a negative monthly cash flow as follows:

| Income | |
|---|---|
| Scheduled Rents | $ 16,663.00 |

| Expenses | |
|---|---|
| Payment to U.S. Bank as proposed under Disclosure Statement | $ 10,624.48 |
| Payment to junior lienholder, Wisam and Suehair Altowaiji | 1,572.72 |
| Property insurance | 695.00 |
| Future property taxes | 1,435.00 |
| Delinquent property taxes | 2,226.16 |
| Utilities, phone | 170.00 |
| **Total Expenses** | **$ 16,723.36** |

| **TOTAL NET RENTS (LOSS)** | **($ 60.36)** |
|---|---|

(Exhibit 5 to the Disclosure Statement.) Further, the expenses described in the Disclosure Statement do not include payment of any anticipated repairs and maintenance for the Property. According to Debtor's counsel, the tenants are responsible for such costs, but no leases have been supplied to verify this information—nor is this issue discussed in the Disclosure Statement. (Declaration of Celine Mui Simon ("Simon Decl."), ¶3.) In fact, the Disclosure Statement indicates that there are no executory contracts or leases that are being confirmed by the Debtor. (Disclosure Statement, p. 6, Section 4).

In addition, the Disclosure Statement fails to describe adequate what the Debtor's living expenses will be. As part of the plan, his residence is being surrendered. Although Debtor lists $1,200 for shelter expenses, it is not possible to determine whether this is a realistic number. (See Exhibit 3 to Disclosure Statement.)

Finally, the Disclosure Statement fails to include funding for payment of Chapter 11 administrative expenses. Unless the Debtor's attorney and accountants will be working for free throughout the duration of the Plan, and no payments will be made to the Trustee, the Disclosure Statement should disclose the anticipated administrative expenses. Debtor's attorney represented that the Debtor's children will make up for any necessary shortfalls to allow the Debtor to

Case: 12-53036    Doc# 55    Filed: 10/08/12    Entered: 10/08/12 17:16:50    Page 5 of 10

perform under the Plan.  (Simon Decl., ¶2 and Exhibit "A" thereto.)  Although reliance on unnamed family members was a component of the Disclosure Statement filed in the First Case (and disapproved by Judge Johnson), such reliance is not included in the Disclosure Statement in the present case, and there is no information provided to show how much and for how long Debtor can rely on his family members to cover the shortfall under the Plan.  (Disclosure Statement filed in First Case on March 3, 2011, p.13:15-16.)  The Disclosure Statement also does not indicate what line of business the children are engaged in, the children's financial condition, and whether the children are willing to contractually agree to make up for the shortfalls under the Plan. Without these disclosures, the Bank, as an investor analyzing the Debtor's Disclosure Statement, cannot make an informed judgment regarding the Plan.

**B.  The Disclosure Statement Should Not Be Approved Because The Plan Is Not Confirmable.**

A disclosure statement cannot be approved when it accompanies a defective plan.  *In re Century Investment Fund VIII Limited Partnership*, 114 B.R. 1003, 1005 (Bankr. E.D. Wis. 1990) ("If a plan is on its face nonconfirmable as a matter of law, then it is appropriate for the court not to approve the disclosure statement.").  When a disclosure statement accompanies an unconfirmable plan, the court need not even consider the adequacy of the information contained in the disclosure statement.  *In re Eastern Maine Elec. Co-op., Inc.,* 125 B.R. 329, 333 (Bankr. D. Me. 1991) ("If the disclosure statement describes a plan that is so 'fatally flawed' that confirmation is 'impossible,' the court should exercise its discretion to refuse to consider the adequacy of disclosures.").  When the Debtor's Plan is defective on its face, the Court must consider certain confirmation issues prior to consideration of the Disclosure Statement, accompanying Debtor's Plan.  *In re Main Road Properties, Inc.*, 144 B.R. 217, 219 (Bankr. D. R.I. 1992) ("[W]hile the Bank's objection raises substantive plan issues which are normally addressed at confirmation, it is proper to consider and rule upon such issues prior to confirmation, where the proposed plan is arguably unconfirmable on its face.").

11 U.S.C. § 1129(a) contains various requirements which determine when a plan shall be confirmed by the Court and provides that a plan shall be confirmed if, with respect to each

Case: 12-53036    Doc# 55    Filed: 10/08/12    Entered: 10/08/12 17:16:50    Page 6 of 10

allowed and impaired secured claim, the holder thereof has accepted the Chapter 11 Plan, or the Chapter 11 Plan provides for payments equal to the value of the allowed amount of the secured creditor's claim. Based on the above sections, and as more fully detailed below, Debtor's Plan fails to comply with these requirements. As such, the Court need not consider the adequacy of the Debtor's Disclosure Statement.

### 1. The Plan is Not Fair and Equitable Under 11 U.S.C. §1129(b)(1).

A plan can only be crammed down if it is "fair and equitable." 11 U.S.C. §1129(b)(1). In order for a plan to be deemed fair and equitable under the cram down provisions, the plan must provide secured creditors with the present value of the collateral securing their claims. 11 U.S.C. §1129(b)(2)(A)(i)(II); *In re Ambanc La Mesa Limited Partnership*, 115 F.3d 650, 653 (9th Cir. 1997). To reflect the time value of the secured creditor's claim, payments made under the Plan must be discounted by a periodic rate of interest, in light of the risks involved. *In re Grandfather Mountain Limited Partnership*, 207 B.R. 475, 487 (Bankr. M.D. N.C. 1996) ("The concept of 'present value' recognizes the time value of money and compensates the creditor for not receiving its money today by charging an additional sum based on a rate of interest called the "discount rate." The appropriate discount rate must be determined on the basis of the rate of interest which is reasonable in light of the risks involved. Therefore, in determining the discount rate, the court should consider the prevailing market rate for a loan of a term equal to the payoff period, with due consideration to the quality of the security and the risk of subsequent default.").

Most courts agree that the appropriate rate of interest to provide the present value of a secured claim is the market interest rate, plus appropriate increases to account for risk factors. See, e.g., *Till v. SCS Credit Corp.*, 541 U.S. 465, 472 (2004) (present value is closely tied with the "condition of the financial market"); *In re Bryson Properties, XVIII*, 961 F.2d 496, 500 (4th Cir. 1992) (courts should consider the prevailing market rate for a loan of equal terms); *In re Memphis Bank & Trust Co.*, 692 F.2d 427, 431 (6th Cir.1982) (courts must use the current market rate of interest used for similar loans in the region); *In re Grandfather Mountain, supra*, 207 B.R. at 487 (the "market rate" must be used in order to satisfy the present value requirement); *In re Birdneck Apartment Assoc.*, 156 B.R. 499, 508 (Bankr. E.D. Va.1993)

Case: 12-53036    Doc# 55    Filed: 10/08/12    Entered: 10/08/12 17:16:50    Page 7 of 10

1  (proper test to determine present value for cramdown is the market interest rate for loans of like

2  terms).

3      Although Debtor claims that his financial condition has improved in this Second Case, he

4  is offering a lower interest rate than previously proposed in the First Case.  In the Disclosure

5  Statement filed in the First Case, Debtor proposed to pay the Bank's claim based on a 25-year

6  amortization schedule at an interest rate of 6% and a balloon payment due in three (3) years.

7  (RFJN, Exhibit "D", pp. 6-7.)  In contrast, Debtor is now proposing to pay the Bank's claim

8  under a fully-amortized 30 year schedule at an interest rate of 4.75% with no balloon payment.

9  (Disclosure Statement, p.4.)  This interest rate is not a "market rate" and it fails to account for

10  appropriate risk factors.  If required, the Bank can provide testimony that the reduced fixed

11  interest rate of 4.75% is not fair or reasonable under the circumstances, and it deprives the Bank

12  of the present value of its claim.

13      The proposed interest rate does not adequately compensate the Bank for the risk inherent

14  in the proposed Chapter 11 Plan.  The Court in the case of *In re American Home Patient, Inc.*,

15  420 F.3d 559, 568 (6th Cir. 2006), held that "the market rate should be applied in Chapter 11

16  cases where there exists an efficient market. But where no efficient market exists for a Chapter

17  11 debtor, then the bankruptcy court should employ the formula approach endorsed by the *Till*

18  plurality."  *Till v. SCS Credit Corp,* 541 U.S. 465, 467 (2004) held that a secured creditor that

19  was subjected to a "cram-down option" was entitled a rate of interest on its obligation that would

20  "compensate a creditor for the fact that had he received the property immediately rather than at a

21  future date, he could have immediately made use of the property."  The Bank can provide

22  testimony that the market interest rate plus an appropriate risk factor should be higher.

23      Clearly, the proposed Plan is a high risk plan with a great likelihood of failure.  Debtor's

24  own calculations demonstrate that there is no net income from the Property even though the

25  Property cash flow has "improved."  There is no provision for funds for repair and maintenance.

26  Even assuming that the Debtor's tenants are somehow responsible for repairs and maintenance of

27  their units, the most "landlord" friendly leases do not require a tenant to repair a roof, plumbing

28  or other similar matters.  Debtor has no ability to pay for such repairs and maintenance.

-8-

Case: 12-53036   Doc# 55   Filed: 10/08/12   Entered: 10/08/12 17:16:50   Page 8 of 10

In addition, the Disclosure Statement is not fair and equitable in that it allows the Debtor nearly two (2) months to cure any default under the Plan. According to the default provision, the Debtor has a ten (10) day grace period to make the Plan payments, and an additional 30 days to cure after service of the notice of default by the Bank, resulting in forty (40) days to cure any default due under the Plan. (Disclosure Statement, p.8.) Forty days to cure a default under the Plan is too long, and would allow the Debtor to be continuously one month late. The default provision also has no deterrent for Debtor to make a late payment, as no late charges or default interest are provided for in the Disclosure Statement. The Disclosure Statement should be amended to provide for the typical 10 days to cure after delivery of a written notice of default has been , and it should provide for the assessment of late charges and default interest to deter Debtor from making a late payment.

### 2. The Plan Does Not Provide For Adequate Means Of Implementation.

Pursuant to 11 U.S.C. §1129(a)(3), a Chapter 11 plan must be proposed in good faith and not by any means forbidden by law. 11 U.S.C. §1129(a) requires that a Plan provide adequate means for its implementation. The absence of adequate means of implementation demonstrates a lack of good faith under Section 1129(a)(3), thereby precluding confirmation of a Chapter 11 Plan. *In re Walker*, 165 B.R. 994, 1003 (Bankr. E.D. Va. 1994).

The Disclosure Statement fails to adequately show how the Debtor could afford the proposed payments under the Plan. As mentioned above, Debtor's projected income and expenses in connection with the Property would result in a monthly net loss of -$60.36, which would not cover anticipated maintenance and repair costs. The monthly negative cash flow of -$60.36 is significant, because Debtor projects that his net discretionary income is $139.59 per month prior to payment of any administrative expenses. (Disclosure Statement, p.16.) If Debtor is relying on his family members to make up the short fall, then the Disclosure Statement should provide adequate information about such sources of income.

### 3. The Plan is Not Feasible.

The feasibility requirement for plan confirmation is defined as follows: "Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial

Case: 12-53036    Doc# 55    Filed: 10/08/12    Entered: 10/08/12 17:16:50    Page 9 of 10

reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. §1129(a)(11).  A Chapter 11 Plan has been held not feasible where: (1) the debtor's projections are speculative and the debtor would operate at a loss throughout the life of the plan (*In Re Danny Thomas Properties II Ltd. Partnership*, 241 F.3d 959, 964-965 (8th Cir. 2001)); or (2) the debtor has overvalued the equity that it can use to satisfy secured creditors' claims, thereby leaving a net deficiency.  *In re VZ Ranch, Inc.*, 69 B.R. 577, 580 (Bankr. D. Mont. 1987).

As mentioned above, the Debtor's Disclosure Statement fails to show adequate means of implementing the Plan.   The Debtor's proposed income and expenses in connection with the Property will result in a negative monthly cash flow and deplete the Debtor's monthly discretionary income under the Plan.

In addition, the Plan does not account for any payment of Chapter 11 Administrative Expenses.  In fact, the Disclosure Statement indicates that there are none.  (Disclosure Statement, p.6.)  That is simply not credible as the Debtor will be required to make payments to the Trustee

### III.  CONCLUSION

Due to the above-mentioned defects in the Disclosure Statement, this Court deny approval of the Disclosure Statement.  The Disclosure Statement must be revised to include adequate information regarding the Debtor's source of payment for implementation of the Plan before the Plan may be properly considered.

Dated: October 8, 2012                    FRENCH & LYON,
                                          A Professional Corporation


                                          By:    /s/  Celine Mui Simon
                                                 Celine Mui Simon,
                                                 Attorneys for Secured Creditor,
                                                 U. S. BANK NATIONAL ASSOCIATION, AS
                                                 TRUSTEE OF THE LEHMAN BROTHERS
                                                 SMALL BALANCE COMMERCIAL MORTGAGE
                                                 PASS-THROUGH CERTIFICATES, 2006-1 BY
                                                 OCWEN LOAN SERVICING, LLC ITS
                                                 ATTORNEY-IN-FACT

Case: 12-53036    Doc# 55    Filed: 10/08/12    Entered: 10/08/12 17:16:50    Page 10 of
10